WEBSTER, Judge.
In this workers’ compensation appeal, the self-insured employer seeks review of the amount of attorney fees it was ordered to pay to claimant’s attorney. By cross appeal, claimant argues that the award of attorney fees should have been greater than it was. We conclude that the cross appeal is so totally devoid of merit as to border on the frivolous and, therefore, affirm without discussion as to the issues raised thereby. We conclude, further, that the employer correctly asserts that claimant’s attorney waived any claim he might otherwise have had to a fee for certain of the services he performed; and that there is no competent evidence to support the amount of the fee awarded for the remaining services. Therefore, we reverse as to the issues raised by the appeal.
In March 1984, claimant sustained a work-related injury when he hit his neck on a piece of machinery. Claimant sustained a second work-related injury in April 1986, when he slipped, injuring his knee. Claimant retained his present attorney in October 1986.
The first record activity reflected as having been undertaken by claimant’s attorney is a Motion for Appointment of Physician, filed on November 26, 1986. It requests merely that an order be entered requiring the employer “to authorize Dr. Richard Merritt for care and treatment of the claim *703 ant.” It does not request an award of attorney fees. The Motion was followed by a Claim for Benefits, filed on December 15, 1986, which sought “[t]emporary total disability benefits and/or temporary partial disability benefits at the proper average weekly wage from the date of accident to present and continuing, costs, interest, penalties and attorney’s fees.”
On March 26, 1987, an order was entered granting the Motion for Appointment of Physician and directing the employer to provide continued chiropractic care by Dr. Richard Merritt, and continued medical care by Dr. William Earp. No mention is made in that order regarding attorney fees. Specifically, jurisdiction was not reserved to award a fee at a later date.
On August 6, 1987, another order was entered. It recited that the parties had stipulated “that on March 14, 1984 and April 24, 1986 the claimant sustained an injury by accident arising out of the course of his employment with the employer”; that proper notice of the accident had been given; “that claimant’s average weekly wage was $570.33 ..., plus the value of group insurance which [has been] provided for the claimant since the accident by the employer leaving a corresponding compensation rate of $315.00”; and that “claimant was temporarily totally disabled from March 13,1987 to the date of the Hearing.” The employer was ordered to pay claimant “temporary total disability and or temporary partial disability benefits from April 24, 1986 to the present predicated upon an average weekly wage of $570.33”; “Dr. Merritt’s bills for his care and treatment of the claimant”; and costs. The order also provided that claimant was to “remain under the care and treatment of Dr. Merritt and Dr. Earp.” In addition, jurisdiction was “reserved to determine the issue of attorney’s fees due the claimant’s attorney.”
Additional Claims for Benefits were filed on October 9 and December 2, 1987. The former requested “payment of all incurred medical bills, costs, interest, attorney’s fees [and] penalties.” The latter requested temporary total disability benefits at the proper compensation rate from May 16 to June 1, and from June 13 to September 15,1986; temporary partial disability benefits at the proper compensation rate from June 2 to 12, 1986; benefits for any other periods of temporary total or temporary partial disability as to which benefits had not been paid at the proper compensation rate; and payment of mileage incurred, costs, interest, penalties and attorney fees. On March 23, 1988, an order was entered awarding claimant temporary partial disability benefits, based upon a compensation rate of $315.00, from June 2 to June 13, 1986, and December 29, 1986, to March 15, 1987; and temporary total disability benefits, based upon the same compensation rate, from September 10 to December 17,1987; directing the employer to pay costs; and reserving jurisdiction “to determine the issue of attorney’s fees due the claimant’s attorney.”
The record reflects the filing of a further Claim for Benefits on February 27, 1990. It sought a determination of claimant’s proper average weekly wage and rate of compensation as a result of insurance benefits having been cancelled on February 13, 1989; and costs, interest, penalties and attorney fees. That claim was amended on March 2, 1990, to include a request for interest and penalties attributable to late payments of temporary partial disability benefits since January 1, 1989; and again on June 29, 1990, to include a request for wage loss benefits from April 16 to May 15, 1990. However, the record does not reflect what ruling, if any, was made regarding that claim.
On April 1, 1991, claimant filed his claim seeking attorney fees and costs. A hearing was held on the request for attorney fees on August 15, 1991. At that time, the parties agreed that claimant’s attorney was entitled to a fee, the only question being the appropriate amount. The parties also agreed that the 1985 version of the fee statute (Section 440.34, Florida Statutes) could be used for both the 1984 and the 1986 injuries, because it had not been amended during the relevant period.
*704 The petition by which claimant’s attorney requested a fee for his services asserted (among other things) that the attorney had devoted approximately 361 hours to representation of claimant; that the issues involved had been difficult; that the hourly rate customarily charged in the locality for similar services was $250.00; and that the attorney had been responsible for securing benefits for claimant having a value of approximately $75,000.00. The petition was accompanied by an affidavit in which the attorney purported to provide a detailed breakdown of the time actually devoted by him to representation of claimant.
However, at the hearing, the attorney conceded that he had kept no time records concerning the representation for which he was seeking a fee; that the affidavit, including the time attributed to each activity, had been prepared primarily by his office staff; that certain of the time values ascribed to activities were nothing more than guesses; that some of the entries were duplicative; and that, although reflected on the affidavit as time devoted by the attorney, many of the time entries actually reflected time devoted by secretaries (of whom the attorney testified he had 23), office runners or other nonprofessional personnel. In short, it was apparent that the time affidavit was so riddled with inaccuracies, guesswork and misrepresentations as to be of absolutely no evidentiary value.
Finally, the judge became so exasperated with the attorney’s inability to testify with any degree of certainty regarding the number of attorney hours devoted to the representation that he announced a recess, directing the parties to return with their “best expert opinion[s]” regarding that number. The attorney then told the judge that he believed that “about the best [he could] do” was say that he had at least as many attorney hours devoted to the representation as had been expended by the employer’s prior counsel, i.e., 181. Almost as soon as he had made that statement, however, the attorney receded from it, saying that he could not even make that statement in good faith. After the recess, the attorney testified that, in his opinion, the number of attorney hours devoted to the representation had actually been approximately one-third less than his initial estimate, or approximately 227. However, the attorney was unable to offer any objective basis for this estimate.
The attorney testified that he had been practising since 1949, and that he had handled 5,000 or 6,000 workers’ compensation cases during his career. He said that he had determined that $250.00 was a reasonable hourly rate in the locality (which was not where his office was situated) for services similar to those he had provided by speaking to two local attorneys, who told him that the range for attorney fees was between $200.00 and $350.00 per hour.
On the subject of benefits secured for claimant, the attorney testified that he had determined that his office had received checks from the employer totaling $63,-994.70, and that, in addition, he had obtained for claimant medical benefits totaling approximately $8,100.00. The attorney agreed that all of the $8,100.00 in medical benefits had been obtained as a result of the March 26, 1987, order directing the employer to pay for the services of Drs. Merritt and Earp.
The only evidence received in support of the request for a fee was the attorney’s testimony and his affidavit filed with the petition. In response, the employer presented the testimony of an attorney who was board-certified in workers' compensation law and had specialized in that subject for more than twenty years: That attorney testified that, in his opinion, there was nothing unique about any of the issues involved in claimant’s case. According to him, the reasonable number of hours necessary to achieve the results actually obtained was approximately 71; the hourly rate customarily charged in the community for the type of services provided was $125.00 in 1987 and increased from year to year, reaching $175.00 late in 1990; and the value of the benefits obtained was approximately $32,100.00. He testified, further, that there were no factors applicable to the services rendered which would justify departing from the statutory fee formula.
*705 On September 10, 1991, the judge entered his order on the petition for attorney fees. In that order, he concluded that the fee formula set out in Section 440.34, Florida Statutes (1985), was “inappropriate in this case because of the type of work and caliber of the representation.” (No further elucidation was provided.) He then found that the reasonable number of hours expended by the attorney on behalf of the claimant was 201.05; that “an average hourly rate for the services rendered” was $287.43; and that the benefits obtained as a result of the attorney’s representation of claimant totaled $72,094.70. Accordingly, the judge ordered the employer to pay the attorney $57,787.80 (201.05 hours X $287.43) as a reasonable fee for the services performed. It is from this order that the employer appeals.
The employer’s first argument is that the judge failed to make findings of fact sufficient to justify a departure from the fee formula set forth in Section 440.34, Florida Statutes (1985); and that the reason for the failure to make such findings is that the facts do not support a departure from the fee formula. Our review of the record convinces us that the employer is correct.
To the extent relevant for purposes of this appeal, Section 440.34, Florida Statutes (1985), provides:
(1) .... Except as provided by this subsection, any attorney’s fee approved by a deputy commissioner shall be equal to 25 percent of the first $5,000 of the amount of the benefits secured, 20 percent of the next $5,000 of the amount of the benefits secured, and 15 percent of the remaining amount of the benefits secured. However, the deputy commissioner shall consider the following factors in each case and may increase or decrease the attorney’s fee if, in his judgment, the circumstances of the particular case warrant such action:
(a) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(b) The likelihood, if apparent to the claimant, that the acceptance of the particular employment will preclude employment of the lawyer by others or cause antagonisms with other clients.
(c) The fee customarily charged in the locality for similar legal services.
(d) The amount involved in the controversy and the benefits resulting to the claimant.
(e) The time limitation imposed by the claimant or the circumstances.
(f) The nature and length of the professional relationship with the claimant.
(g) The experience, reputation, and ability of the lawyer or lawyers performing services.
(h) The contingency or certainty of a fee.
(2) In awarding a reasonable attorney’s fee, the deputy commissioner shall consider only those benefits to the claimant that the attorney is responsible for securing.
Section 440.34 reflects a clear legislative intent to standardize attorney fee awards absent exceptional circumstances. See, e.g., Fiesta Fashions, Inc. v. Capin, 450 So.2d 1128 (Fla. 1st DCA 1984); Roundtree Transport, Inc. v. Godek, 412 So.2d 66 (Fla. 1st DCA 1982). It attempts to achieve that result by setting a “percentage formula amount as the customary or presumptively fair fee for legal services rendered pursuant to a contingency fee arrangement.” Marsh v. Benedetto, 566 So.2d 324, 325 (Fla. 1st DCA 1990). However, it permits the judge of compensation claims either to increase or to decrease the presumptively fair fee arrived at pursuant to the fee formula if, after considering all of the enumerated factors, the judge concludes that the circumstances are sufficiently exceptional to justify such a departure. The standard of review on appeal from such a departure from the statutory fee formula is whether the record contains substantial competent evidence to support the judge’s decision. See, e.g., Marsh v. Benedetto, supra; Department of Agriculture and Consumer Services v. Handy, 413 So.2d 808 (Fla. 1st DCA), review denied, 419 So.2d 1198 (Fla.1982).
*706 Having carefully reviewed the entire record, we conclude that it does not contain competent substantial evidence that a fee determined according to the statutory fee formula would be manifestly unfair; and, therefore, that it likewise does not contain competent substantial evidence to support an upward departure in any amount from the amount arrived at by application of the fee formula. See Marsh v. Benedetto, supra. There were no novel or difficult issues involved; on the contrary, all of the issues were relatively routine. There is no competent evidence from which one might accurately arrive at the number of hours reasonably devoted by the attorney to the matter. The attorney kept no time records whatsoever. His time affidavit, which had been prepared primarily by his office staff, was so replete with errors as to be of no evidentiary value. Likewise, it is apparent from his testimony — during which he initially claimed to have devoted 361 hours, reduced that figure to 181, and ultimately settled on 227— that the attorney was doing nothing more than guessing at the number of hours he had spent on the representation. There is no explanation in the record for the judge’s decision that an hourly rate of $287.43 was customary at the relevant times in the locality for similar legal services. Rather, the only competent evidence was that the customary hourly rate for such services was $125.00 in 1987, and rose gradually, to between $150.00 and $175.00 in 1990. There is no competent evidence to suggest that the attorney lost any business or antagonized any other clients by representing claimant; that either claimant or the circumstances imposed any unusual time limitations upon the attorney; or that there was anything out of the ordinary regarding either the nature or the length of the attorney’s professional relationship with claimant. Although the record does support a finding that the attorney’s experience, reputation and ability are above average, that, alone, is clearly insufficient to support a departure from the fee formula. See generally Marsh v. Benedetto, supra. Accordingly, it was error for the judge to depart from the statutory fee formula.
The employer argues, next, that the $72,094.70 in benefits which the judge found had been obtained as a result of the attorney’s representation of claimant must be reduced by $8,100.00, which the attorney conceded was the value of the medical benefits received by claimant as a result of the order dated March 26, 1987. Again, our review of the record convinces us that the employer is correct.
The order of March 26,1987, was entered in response to the Motion for Appointment of Physician filed by the attorney on November 26, 1986. That Motion did not request an award of attorney fees. Likewise, the order entered on March 26, 1987, neither awarded an attorney fee nor reserved jurisdiction to do so at a later date. As the attorney correctly conceded below, the claim to an attorney fee was ripe at the time of the hearing which resulted in the March 26, 1987, order. Because that order did not address entitlement to a fee, and did not reserve jurisdiction to do so at a later date, the attorney has waived any right he might otherwise have had to an award for the services which resulted in that order. Compare Florida Frozen Foods, Inc. v. Parks, 475 So.2d 1348 (Fla. 1st DCA 1985) with Gilman v. South Florida Water Management District, 584 So.2d 591 (Fla. 1st DCA 1991).
Because the attorney is not entitled to an award for his services which resulted in the order of March 26, 1987, the $8,100.00 in medical benefits attributable to that order must be subtracted from the $72,094.70 which the judge found was the value of all benefits received by claimant as a result of the attorney’s efforts before the statutory fee formula may be applied. The resulting figure is $63,994.70. Application of the fee formula set forth in Section 440.34, Florida Statutes (1985), results in a fee of $10,-349.20, which we conclude is the fee to which the attorney is entitled. Accordingly, we reverse the order appealed, and remand with directions that the judge of compensation claims enter an order requiring the employer to pay $10,349.20 to claimant’s attorney as a reasonable fee for his services on behalf of claimant.
*707 AFFIRMED IN PART; REVERSED IN PART; and REMANDED, with directions.
ERVIN and MINER, JJ., concur.